SEELEY *v.* SHARRER.

MORTGAGES—JUDICIAL SALE—PURCHASE BY MORTGAGOR.

A mortgage given by an execution debtor pending a bill by him
to set aside an execution sale of the land mortgaged, upon
which bill a decree is entered giving the purchaser at such
sale a lien for improvements and disbursements, to be paid by
the debtor, the land to be sold in case of default, is valid as
against the debtor and a grantee from him with notice,
where the land is sold under such decree, and purchased by a
third person for the benefit of such debtor.

Appeal from Tuscola; Beach, J.   Submitted February
10, 1897.   Decided March 29, 1897.

Bill by John F. Seeley against John Sharrer to quiet
title.   From a decree for complainant, defendant appeals.
Reversed.

*T. W. Atwood*, for complainant.

*John E. Kinnane*, for defendant.

HOOKER, J.   On November 3, 1874, one Hasty pur-
chased the land in question.   November 9, 1877, he gave
a mortgage for $275 upon said land to John and William
Fletcher.   December 1, 1879, a sheriff's deed of said land
was executed to William C. Buchanan, upon a levy made
April 29, 1878.   December 22, 1879, Buchanan sold to
Calder, subject to the Fletcher mortgage.   December 10,
1884, Calder sold to Brian, who entered upon and posses-
sed the premises.   The Fletcher mortgage was paid by
Calder and Brian, and it was discharged.   July 9, 1885,
Hasty filed a bill to set aside the execution sale, also filing
*lis pendens*.   March 13, 1888, Hasty made a mortgage of
$350 upon the premises to Parker and Conley, Jr., and it
was recorded July 17, 1888.   December 4, 1888, Hasty's

bill was dismissed. January 24, 1889, a stipulation was made setting aside this decree, and that a new decree should be made, giving a lien to Brian for his improvements, claims, and disbursements, including the Fletcher mortgage, amounting to $950, which was to be paid by Hasty; and, in case of his default, the land was to be sold, the same as upon foreclosure of a mortgage. February 12, 1889, a decree was made in accordance with the stipulation. August 5, 1889, a sale under this decree took place, and the premises were bid in by one Corcoran for $1,003. On the same day the land was deeded to Hasty, who paid for the same by money borrowed of Willis J. Beecher, to whom he at that time executed a mortgage for $1,100 on the land. May 4, 1893, Seeley, the complainant, bought the land of Hasty, taking a warranty deed subject to the $1,100 mortgage. June 29, 1893, Sharrer, the defendant, took the $350 Parker and Conley mortgage by assignment, and on March 22, 1894, commenced to foreclose the same. This suit was then commenced by Seeley, to set aside this mortgage and the foreclosure proceedings, and to quiet his title to the land under his purchase from Hasty. The circuit court granted a decree as prayed, and defendant has appealed.

The claims of the complainant, as stated in his brief, are:

1. That the $350 mortgage was without consideration.
2. That on August 5, 1889, when the land was sold at commissioner's sale, it was agreed by the Conleys that said mortgage should be discharged.

There is evidence that Hasty's suit to set aside the execution sale was brought under an arrangement with William Conley, Sr.; that the mortgage was given at Conley's instigation, and by his direction, to his son and Parker; and that the only consideration was their services in the matter. It is claimed that, when it became apparent that the land must be sold under the decree, the Conleys and Corcoran undertook to save something for Hasty, and that Corcoran succeeded in raising $1,100 through Seeley,

the complainant, upon the promise of the Conleys that the $350 mortgage should be discharged. Such is Corcoran's testimony. It is, however, contradicted, by both the Conleys, and by Parker, and by a letter written by Conley, Jr., from East Saginaw, on August 9th, which states that he wrote Seeley that he and Parker would discharge the mortgage when it was satisfied. We are of the opinion that the evidence strongly preponderates in favor of the defense upon the proposition that there was an, agreement to discharge this mortgage which should bind the defendant.

There appears to have been sufficient consideration for this mortgage, and, while a *bona fide* sale to Corcoran might have had the effect of cutting it off, a purchase by Hasty would not have that effect. Both bill and testimony show that the purchase, while in the name of Corcoran, was for the benefit of Hasty; and the inference is strong that the object was to cut off the Conley and Parker mortgage. If not, why should not Hasty have bid in the property, or, better yet (because it would have saved the expenses of the sale and subsequent costs), have paid the amount of the decree? It is obvious from the testimony that the purchase by Corcoran was for Hasty, Corcoran at the time acting as his attorney. We have no doubt that this mortgage should be held to stand as a valid mortgage as against Hasty, and, as the complainant is a grantee with notice, it is equally binding upon him.

We have no alternative but to reverse the decree of the circuit court in chancery, and dismiss the bill, with costs of both courts. Ordered accordingly.

The other Justices concurred.